IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

BARRY THOMAS,
    Petitioner.

Criminal No.:  ELH-10-082
Related Civil No.:  ELH-19-410

**MEMORANDUM OPINION**

This post-conviction case pits the principle of judicial finality against the precept of justice. The government advocates for finality.  But, under the circumstances attendant here, finality must yield to justice, the hallmark of our legal system.

Barry Thomas, Petitioner, was convicted under 18 U.S.C. § 924(c) and was sentenced as a career offender to 235 months of imprisonment (*i.e.*, 19 and a half years).[1]  The career offender designation was based on two predicate Maryland drug convictions. However, one of those offenses was subsequently vacated as a result of a successful coram nobis proceeding litigated by Thomas in the Circuit Court for Baltimore City.

Accordingly, through counsel, Thomas filed a "Request For New Sentencing Hearing" (ECF 142), as well as an addendum.  ECF 144.  The government filed an opposition to the Petition (ECF 148), supported by exhibits.  Petitioner replied.  ECF 149.  At the Court's request (ECF 160), Thomas filed the federal sentencing transcript (ECF 162), as well as a supplemental memorandum. ECF 165.  I shall refer to ECF 142 and ECF 165 collectively as the "Petition."   And, the

---

[1] The sentence was imposed by Judge William D. Quarles, Jr., who has since retired.  The case was reassigned to me in 2016, following the retirement of Judge Quarles.  *See* Docket.

government filed a supplemental opposition. ECF 166. I shall refer to ECF 148 and ECF 166 collectively as the "Opposition."

Thomas agrees with the government that his submissions should be construed under 28 U.S.C. § 2255. *See* ECF 148 at 3; ECF 149 at 1. Under 28 U.S.C. § 2255(b), a hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." The Court held a hearing on June 21, 2019, attended by Petitioner, at which argument was presented.

In opposing the Petition, the government advances a host of contentions. It argues that there is no legal or statutory authority to support Thomas's request for relief. Moreover, the government maintains that the Petition was untimely filed, and Thomas has not established a basis for equitable tolling. Further, the government asserts that, even if the Petition was timely filed, it is barred based on procedural default, because Thomas never appealed his sentence. And, the government contends that, even if the Petition was timely filed, and even in the absence of a procedural default, Petitioner's "claim that he was erroneously sentenced as a career offender under the United States Sentencing Guidelines is not subject to collateral review." ECF 148 at 1. At oral argument, the government also underscored the importance of finality in regard to a criminal case.

By Order of June 28, 2019 (ECF 170), I granted the Petition, indicating that a Memorandum Opinion would follow to explain the ruling. The Petitioner will be resentenced on July 8, 2019. *See* Docket.

# I. Factual and Procedural Background

Thomas was born in September 1961. He was arrested in Baltimore City on November 9, 2009, after drugs and a firearm were found in a motor vehicle that he was driving. He has been in continuous custody since that time.

As a result of that occurrence, a grand jury in the District Court of Maryland indicted Thomas and two others on March 3, 2010, charging multiple offenses. ECF 1. Of relevance here, Thomas was charged with conspiracy to distribute and possess with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 846 (Count One); felon in possession of a semi-automatic handgun, in violation of 18 U.S.C. § 922(g)(1) (Count Five); possession of a semi-automatic handgun, in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Six); and possession with intent to distribute both heroin and cocaine (Count Seven). *Id.*

On August 9, 2010, before Judge William D. Quarles, Jr., Petitioner entered a plea of guilty to Count Six, charging possession of a firearm in furtherance of drug trafficking, under 18 U.S.C. § 924(c). ECF 61. The offense carries a mandatory minimum sentence of five years' imprisonment and a maximum term of life imprisonment.

The plea was tendered pursuant to a Plea Agreement. ECF 66; ECF 67. In the Plea Agreement, Thomas expressly waived his appellate rights, except that he reserved the right to appeal any sentence that exceeded 327 months' imprisonment. ECF 66, ¶ 13. And, the government agreed to recommend a sentence of imprisonment within the final advisory sentencing guidelines range. ECF 67, ¶ 8.

The Plea Agreement includes a Statement of Facts. ECF 66 at 8. The factual summary indicates that law enforcement stopped a vehicle driven by defendant on November 7, 2009.

Codefendant Darryl Chase was a passenger in the vehicle. *Id.*[2] A search of the vehicle revealed two bags of heroin in the center console, with a net weight of 44.73 grams; one bag of cocaine, with a net weight of 7.42 grams; and a 9mm handgun located "[d]irectly next to" the drugs. *Id.*

Sentencing was initially scheduled for December 7, 2010. ECF 68. However, Thomas's defense attorney at the time, Gerald Ruter, subsequently advised Judge Quarles that defendant had filed for coram nobis relief in the Circuit Court for Baltimore City. ECF 72. The coram nobis relief was sought in connection with two prior felony drug convictions in that court: Case No. 801011024 ("Case I") and Case No. 203007032 ("Case II"). ECF 148-3. As to Case II, the coram nobis petition was filed on June 30, 2010. *Id.*; *see also* ECF 117-1. This was prior to Thomas's plea of guilty in the federal case. And, as to Case I, the coram nobis petition was filed on August 13, 2010, just days after Thomas pleaded guilty in the underlying case. ECF 148-3; ECF 117-2. Another coram nobus petition was filed for Case II in October 2010. *See* ECF 117-3. Because of the pendency of the coram nobis petitions, defense counsel requested and obtained several postponements of Thomas's federal sentencing. *See* ECF 72; ECF 85; ECF 91; ECF 93; ECF 99; ECF 113; *see also* ECF 148-1; ECF 162 at 14.

In a Memorandum Opinion and Order of November 13, 2012, the Circuit Court for Baltimore City (Young, J.) denied Thomas's requests for coram nobis relief. ECF 115-2. In the meantime, Judge Quarles set sentencing for February 13, 2013. *See* second docket entry for October 31, 2012; *see also* ECF 115.

---

[2] The third codefendant, Lakeisha Holloway, obtained heroin and cocaine from Thomas and Chase.

The Presentence Report ("PSR," ECF 161) was prepared in anticipation of sentencing on December 7, 2010.[3] According to the PSR, Thomas qualified as a career offender. *Id.* ¶¶ 14, 29. In reaching this conclusion, the probation agent relied on the defendant's two prior State felony drug convictions, which were at issue in the coram nobis proceeding.

In particular, the prior State felony drug convictions are referenced in the PSR at paragraphs 22 and 23 for Case I, and paragraphs 24 and 25 for Case II. Case I involved attempted distribution of heroin on July 17, 2000. ECF 161, ¶¶ 22, 23. Case II involved possession with intent to distribute cocaine in 2004. *Id.* ¶¶ 24, 25.[4] For Case I, defendant received a four-year sentence, all of which was suspended, except for time served of about three weeks. As to Case II, he received a sentence of three years' incarceration. But, the conviction in Case II violated defendant's probation as to Case I. For the violation of probation in regard to Case I, Thomas received a three-year sentence, concurrent with the three-year sentence imposed in Case II.

A review of the PSR reflects that the concurrent three-year sentences were the longest sentences defendant had ever served prior to the sentence imposed in this case. And, defendant served only a portion of those sentences, because he was paroled in February 2005. *See* ECF 161; ECF 115 at 2.

Further, the PSR reflects that Thomas had a total of nine criminal history points. ECF 161, ¶ 28. This would normally equate to a criminal history category of IV. *Id.* But, as a career offender, Thomas's criminal history category jumped to VI. *Id.* ¶ 29.

---

[3] Initially, the Presentence Report was not docketed. However, I located a copy in Judge Quarles's file and submitted it for docketing, under seal. *See* ECF 161. The handwritten notations were on the document when I located it, and presumably were made by Judge Quarles.

[4] The paragraphs numbered 22 and 24, referenced above, are found at ECF 161 at 7 and 8. The PSR contains duplicate paragraphs numbered 20-25 on page 9 of ECF 161.

On January 25, 2013, Mr. Ruter filed a detailed sentencing memorandum on behalf of Thomas. ECF 115. He also filed numerous exhibits. ECF 115-1 to ECF 115-8; ECF 117; ECF 117-1 to ECF 117-3; ECF 118; ECF 118-1 to ECF 118-2. Among other things, he objected to the career offender designation, and argued that defendant's prior State felony drug convictions were unconstitutional. ECF 115 at 2-7. In addition, he provided Judge Quarles with a copy of the coram nobis petitions filed in the State court. ECF 117-1 (Case II, Case No. 203007032); ECF 117-2 (Case I, Case No. 801011024); ECF 117-3 (Case II, Case No. 203007032).

The government also submitted a sentencing memorandum. ECF 119; ECF 148-4. There, the government disputed the defendant's contention that he did not qualify as a career offender because of a constitutionally defective conviction in State court.

Judge Quarles proceeded to sentencing on February 13, 2013. ECF 120. At sentencing, several family members spoke on behalf of the defendant. *See* ECF 162 at 4-11. The defendant, who was then 51 years of age, also addressed the Court. *Id.* at 26-31.

The government recommended a career offender guideline sentence. *Id.* at 13. It described Thomas as "the most culpable of the three defendants," with a "significant criminal history." *Id.* at 11. The government also pointed out that the firearm was recovered from the defendant's vehicle, "next to the drugs." *Id.* at 12. And, it described Thomas as "a recidivist drug trafficker." *Id.*

Defense counsel noted that the defendant had "a very small quantity of drugs" in his possession at the time of the vehicle stop. *Id.* at 16. And, with regard to Thomas's two prior State drug convictions, defense counsel indicated that they "speak of a person who is at the lowest level of being a drug dealer on the streets," consistent with his need to "feed the beast," *i.e.*, his own heroin addiction, dating to when he was 17 years of age. *Id.* at 16-17.

Mr. Ruter vigorously urged Judge Quarles to impose a variant sentence. *See, e.g.*, ECF 162 at 26 (120 months); ECF 115 at 7 (60 months). According to defense counsel, a guidelines sentence would be "grossly out of proportion . . . " to the underlying offense. ECF 162 at 19.

Of relevance here, Judge Quarles found that defendant qualified as a career offender based on "his two previous felony narcotics convictions . . . .", *i.e.*, Case I and Case II. *Id.* at 31. After deductions, the Court determined that the defendant had an adjusted advisory sentencing guidelines range of 235 to 293 months of imprisonment. ECF 115 at 7; ECF 162 at 11. If the defendant were not a career offender, however, his guidelines would have been determined by U.S.S.G. § 2K2.4, *i.e.*, the mandatory minimum of 60 months' imprisonment. ECF 115 at 7.

Among other things, Judge Quarles stated that a variant sentence "would make a mockery . . . of the career criminal statute." ECF 162 at 19. Moreover, the court observed that the defendant had received "breaks in the past that he didn't take seriously," adding: "[S]o I'm not so sure that . . . he should get breaks now." *Id.* at 21.

Thereafter, Judge Quarles sentenced Thomas to a period of incarceration of 235 months, corresponding to the bottom of the final advisory sentencing guidelines range. ECF 121 (Judgment of 2/19/13); ECF 122 (Statement of Reasons of 2/19/13).[5] In the Statement of Reasons (ECF 122 at 4), Judge Quarles stated: "Because of [Petitioner's] two previous felony narcotics convictions, he is a career offender and criminal history category VI." *Id.* Judge Quarles also observed that

---

[5] Of course, defendant received credit for his pretrial detention, dating to November 2009. Thus, defendant has served almost ten years of his sentence of 19 and a half years.

To the extent relevant, codefendant Chase pled guilty to conspiracy under 21 U.S.C. § 846. ECF 57; ECF 58. He had an advisory guideline range of 37 to 46 months, and he received a sentence of 37 months' imprisonment. ECF 81; ECF 82. Holloway pleaded guilty to two offenses: possession of a firearm in furtherance of drug trafficking, under 18 U.S.C. § 924(c), as well as possession with intent to distribute, under 21 U.S.C. § 841(a)(1). ECF 63; ECF 64. She received a total sentence of twelve years. ECF 83; ECF 84.

the defendant began use of heroin at age fourteen.  *Id.*  And, he pointed out that Thomas is a high school graduate with a commercial driver's license.  ECF 162 at 24.

As noted, under the Plea Agreement, Thomas waived his right to appeal, subject to a caveat that is not applicable here.  No direct appeal was taken.  However, on February 12, 2014, Thomas, then self-represented, moved to reduce his sentence.  ECF 123.  Judge Quarles denied that request. ECF 124.  Then, on September 25, 2014, Thomas, still self-represented, filed another motion to reduce his sentence, under 18 U.S.C. § 3582(c), U.S.S.G. § 2D1.1, and Amendment 782.  ECF 126.  He complained, among other things, about the career offender designation.  *Id.* at 2.  The government opposed the motion.  ECF 130.  The Court denied the motion on March 28, 2016. ECF 131; ECF 132.

In the meantime, following the ruling in the coram nobis proceeding in the Circuit Court for Baltimore City, an appeal was noted to the Maryland Court of Special Appeals.  Unfortunately, the case was delayed because Thomas's lawyer suffered a stroke, was unable to practice law, and ultimately was disbarred by consent.  ECF 142, ¶ 8(a).  Mr. Thomas subsequently obtained new coram nobis counsel, who also represents him in this matter.  ECF 149 at 2, ¶ 3.

On February 23, 2016, in an unreported opinion, the Maryland Court of Special Appeals vacated the denial of coram nobis relief and remanded the matter to the Circuit Court for Baltimore City.  *See Thomas v. State*, 2016 WL 706779 (Md. Ct. Spec. App. Feb. 23, 2016).  The intermediate appellate court observed that, under Petitioner's federal plea agreement, the judge was required to take the federal sentencing guidelines into account, and Thomas faced a higher sentencing range because of his prior State convictions.  *Id.* at *3.  It added, *id.*:  "Our conclusion is bolstered by the evidence . . . showing that [Thomas] received" a sentence of 235 months from the federal court.

The court concluded that Thomas established "significant collateral consequences due to his prior [State] convictions." *Id.*

On remand to the Circuit Court for Baltimore City, that court scheduled a hearing for January 4, 2017. On that date, Judge Melissa Copeland signed a "Consent Order," granting coram nobis relief to Thomas as to Case I, Case No. 801011024, thereby vacating that conviction. ECF 144-1. That conviction corresponds to the offense referenced in paragraphs 22 and 23 of the PSR. *See* ECF 161. Pursuant to the Consent Order, Thomas agreed to withdraw his claim for coram nobis relief as to Case II, Case No. 203007032.

The Petition promptly followed on January 17, 2017. ECF 142. Additional facts are included below.

## II.     Section 2255

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack. *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *United States v. Hodge*, ___ F.3d ___ (4th Cir. 2018); *United States v. Middleton*, 883 F.3d 485 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015).

"[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428). In other words, the movant must establish (1) an error of constitutional magnitude; (2) a sentence imposed

outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

Claims previously litigated on direct appeal are generally not cognizable under § 2255. *Schlup v. Delo*, 513 U.S. 298, 318-19 (1995). In *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976), the Court said that a petitioner "will not be allowed to recast, under the guise of a collateral attack, questions fully considered" and decided on direct appeal.

The scope of a collateral attack under § 2255 is far narrower than an appeal, but a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, ___ U.S. ___, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Thus, any failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that where the petitioner "failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged . . . violation.'") (citation omitted).[6]

---

[6] Failure to raise on direct appeal a claim of ineffective assistance of counsel is not regarded as procedurally defaulted. *Massaro v. United States*, 538 U.S. 500, 509 (2003). Thus, such a claim is not barred under § 2255.

Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see also Dretke*, 541 U.S. at 393; *Reed*, 512 U.S. at 354; *Frady*, 456 U.S. at 167-68.

In order to show cause for failure to raise a claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see also Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel"). Additionally, the alleged error cannot simply create "a *possibility* of prejudice," but must be proven to work to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Put another way, prejudice does not support relief from a procedural default, in the absence of a showing of cause. *Carrier*, 477 U.S. at 494; *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

The actual innocence exception "only applies in limited circumstances." *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014). As the Fourth Circuit recently said in the context of a habeas case under 28 U.S.C. § 2254,[7] "A valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence –

---

[7] "[T]he grounds for relief under § 2255 are equivalent to those encompassed by § 2254 [and] § 2255 was intended to mirror § 2254 in operative effect." *Davis v. United States*, 417 U.S. 333, 344 (1974).

that was not presented at trial.'" *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (quoting *Schlup*, 513 U.S. at 324). Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'" *Finch*, 914 F.3d at 298 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)). It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ." *Finch*, 914 F.3d at 299 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)).

In order to show "actual innocence," then, the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley*, 523 U.S. at 623. Moreover, the petitioner must meet his burden by clear and convincing evidence. *Mikalajunas*, 186 F.3d at 494. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Jones*, 758 F.3d at 583 (emphasis added); *see Bousley*, 523 U.S. at 623.

### III. Discussion

### A.

"[T]he career offender provision is an advisory guideline promulgated by the United States Sentencing Commission." *United States v. Furlow*, ___ F.3d ___, 2019 WL 2621773, at *1 (4th Cir. June 27, 2019). In turn, the Sentencing Commission is an agency within the judiciary that "Congress has tasked with promulgating 'guidelines . . . for use of a sentencing court in determining the sentence to be imposed in a criminal case.'" *Id.* at n.1 (quoting 28 U.S.C. § 994(a)(1)).

Unlike the mandatory sentencing provisions applicable to an Armed Career Criminal, 18 U.S.C. § 924(e), "the career offender provision creates no statutory penalty. *Furlow*, 2019 WL2621773, at *1. However, a defendant who qualifies for an enhancement as a career offender "may be subject to an increased guidelines offense level and criminal history category, which would result in an increased Guidelines range." *Id.* (citing U.S.S.G. § 4B1.1(b)).

To be sure, the guidelines are merely advisory, not mandatory. *See*, *e.g.*, *United States v. Booker*, 543 U.S. 220, 260-62 (2005); *Rita v. United States*, 551 U.S. 338, 361-62 (2007). But, it is equally clear that the sentencing guidelines are the "foundation of federal sentencing decisions." *United States v. Hughes*, ___ U.S. ___, 138 S. Ct. 1765, 1775 (2018). Indeed, the guidelines range generally serves as the "starting point" in the effort of a judge to fashion a reasonable sentence. *Freeman v. United States*, 564 U.S. 522, 529 (2011). Thus, the Supreme Court has described the sentencing guidelines as "the lodestone of sentencing." *Peugh v. United States*, ___ U.S. ___, 133 S. Ct. 2072, 2084 (2013). Because of their "central role in sentencing," an "error related to the guidelines can be particularly serious." *Molina-Martinez v. United States*, ___ U.S. ___, 136 S. Ct. 1338, 1345 (2016); *see United States v. Winbush*, 922 F.3d 227, 231 (4th Cir. 2019); *United States v. Carthorne*, 878 F.3d 458, 469 (4th Cir. 2017).

Thomas was found to be a career offender under U.S.S.G. § 4B1.1. To qualify as a career offender, the federal offense of conviction must be either a felony crime of violence or a felony controlled substance offense; the defendant must have committed the underlying offense when he was at least eighteen years old; *and* the defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Of relevance here, U.S.S.G. § 4B1.2(b) defines "controlled substance offense" as follows:

The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the

manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

It is undisputed that Thomas did, in fact, qualify as a career offender at the time of his federal sentencing. However, since then, based on a successful State coram nobis proceeding, one of his two predicate convictions was vacated.

In Maryland, a coram nobis proceeding is an independent civil action. *Skok v. State*, 361 Md. 52, 65 (2000); *Ruby v. State*, 353 Md. 100, 107 (1999); *Hicks v. State*, 139 Md. App. 1, 6 (2001). In *Keane v. State*, 164 Md. 685, 691 (1933), the Maryland Court of Appeals explained the nature of the writ:

> "The writ of error *coram nobis* is an old common-law writ recognized in this state. Its functions differ from an ordinary writ of error in that the latter raises questions of law, while it deals only with facts, which, if known at the time the judgment was rendered, would have prohibited its rendition. It is also unlike a writ of error, as it is addressed to the court which rendered the judgment, while a writ of error is addressed to some other and superior court."

(Citation omitted); *see also Ruby*, 353 Md. at 105; *Johnson v. State*, 215 Md. 333, 336 (1958); *Miles v. State*, 141 Md. App. 381, 387 (2001); *Jones v. State*, 114 Md. App. 471, 475, *cert. denied*, 346 Md. 27, *cert. denied*, 522 U.S. 917 (1997).

The *Skok* Court recognized important limitations as to coram nobis when it serves as a basis to challenge criminal convictions. *Id.* at 78. First, the challenge must be of a "constitutional, jurisdictional or fundamental character." *Id.* at 78. Second, the petitioner must face "significant collateral consequences from the conviction." *Id.* at 79. Moreover, because a presumption of regularity attaches to a criminal case, the burden of proof is on the coram nobis petitioner. *Id.* at 78. And, the principles of waiver apply to coram nobis actions. *Id.* at 79.

**B.**

The government claims that the Petition was untimely filed, and is barred by the one-year period of limitations applicable to a petition filed under 28 U.S.C. § 2255(f).  That limitations period runs from the latest of: (1) "the date on which the judgment of conviction becomes final"; (2) "the date on which the impediment to making a motion created by governmental action" is removed, if the movant was prevented from making his motion by governmental action that was in violation of the Constitution or laws of the United States; (3) "the date on which the right asserted was initially recognized by the Supreme Court," if that newly-recognized right has been made retroactive to cases on collateral review; or (4) "the date on which the facts supporting the claim or claims could have been discovered through the exercise of due diligence."  *Id.*

The Judgment was entered on February 19, 2013.  *See*  ECF 121.  Under Fed. R. App. P. 4(b)(1)(A), a notice of appeal must be filed within fourteen days of the entry of judgment. Petitioner did not note an appeal.  Therefore, the conviction became final on March 5, 2013, which was the expiration date for filing an appeal.  *See United States v. Wilson*, 256 F.3d 217, 221 (4th Cir. 2001) (where no appeal filed, conviction becomes final after time for filing appeal had lapsed).

Accordingly, under § 2255(f), Petitioner was required to file his Petition on or before March 5, 2014.  But, the Petition was not filed until January 17, 2017.  ECF 142.  Therefore, the Petition is subject to dismissal, unless an exception applies, such as a newly-recognized right.

Equitable tolling is available in "those 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party and gross injustice would result.'"  *Whiteside v. United States,* 775 F.3d 180, 184 (4th Cir. 2014) (en banc) (declining to apply equitable tolling to one-year limitations period in 28 U.S.C. § 2255) (quoting *Rouse v. Lee,* 339 F.3d 238, 246 (4th Cir. 2003) (en banc)) (additional

citations omitted); *see Hill v. Braxton,* 277 F.3d 701, 704 (4th Cir. 2001); *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir. 2000). For equitable tolling to apply, an otherwise time-barred petitioner must demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.'" *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). A petitioner need show only "reasonable diligence", however; there is no requirement for "maximum feasible diligence." *Holland,* 560 U.S. at 653 (citation omitted).

Petitioner did not obtain coram nobis relief until January 2017. The Petition was filed soon afterward. Nevertheless, the government maintains that equitable tolling is not available.

Until Thomas obtained coram nobis relief, he had no factual or legal basis to challenge his federal sentence. In this regard, *Johnson v. United States*, 544 U.S. 295 (2005), is instructive.[8]

In *Johnson*, the petitioner filed for post-conviction relief, challenging his career offender sentence on the ground that a predicate Georgia conviction, used to enhance his sentence, was subsequently vacated. The Supreme Court determined that the one-year limitations period in 28 U.S.C. § 2255 begins to run "when a petitioner receives notice of the order vacating the prior conviction, provided that he has sought it with due diligence in state court, *after* entry of judgment in the federal case with the enhanced sentence." *Id.* at 298 (emphasis added). The Court explained that "the state-court vacatur is a matter of fact for purposes of the limitation rule" in 28 U.S.C. § 2255(f)(4), so long as the petitioner "has shown due diligence in seeking the order." *Id.* at 302.

Notably, the government agreed that if Mr. Johnson timely filed his § 2255 petition, he was "entitled to federal resentencing" for the same reason advanced by Thomas here — because the Georgia state court subsequently "vacated one of the judgments supporting his enhanced

---

[8] It does not appear that the parties cited *Johnson*.

sentence." *Id.* at 302-03. The Supreme Court never rejected that proposition. To the contrary, and of import here, it said, *id.* at 303: "Neither the enhancement provision of the Sentencing Guidelines applied here, nor the mandatory enhancement under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), has been read to mean that the validity of a prior conviction supporting an enhanced federal sentence is beyond challenge." Indeed, it added, *id.*: "Our cases applying these provisions assume the contrary, that a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated."

Significantly, the *Johnson* Court recognized that, prior to a vacatur by a state, a petitioner cannot obtain relief under § 2255. *Id.* at 305. Thus, it reasoned that limitations cannot begin to run until vacatur is achieved. It reasoned, *id.*: "Prior to the federal conviction, a petitioner has no § 2255 claim because he has no enhanced federal sentence to challenge[.]" And, the Court added, *id.*: "[I]t is highly doubtful that in § 2255 challenges to enhanced sentences Congress would have meant to start the period running under [§ 2255(f)(4)] on the discoverability of facts that may have no significance under federal law for years to come and that cannot by themselves be the basis of a § 2255 claim[.]"

Thus, the Court squarely ruled that "notice of the order vacating the predicate conviction is the event that starts the one year running." *Johnson*, 544 U.S. at 308. And, the due diligence requirement is satisfied when the petitioner takes "prompt action . . . as soon as he is in a position to realize that he has an interest in challenging the prior conviction." *Id.* That standard is easily met here.

In reaching this result, the *Johnson* Court relied, *inter alia*, on *Daniels v. United States*, 532 U.S. 374, 381 (2001), as well as *Custis v. United States*, 511 U.S. 485, 497 (1994). In *Custis*, for example, which concerned an enhanced sentence under the ACCA, the Court observed that a

defendant who successfully attacked a state conviction in state court could then "apply for reopening of any federal sentence enhanced by the state sentences." *Id.* at 497. As to Mr. Johnson, however, the Court expressed no opinion on the merits.

*United States v. Gadsen*, 332 F.3d 224, 228 (4th Cir. 2003), which is cited in *Johnson*, 544 U.S. at 302, is also instructive. There, the defendant was sentenced as a career offender based in part on a prior South Carolina conviction. After imposition of the federal conviction, Gadsen filed a petition in South Carolina for post-conviction relief, arguing that his plea in the state case was not voluntary. The South Carolina court agreed. *Id.* at 225-26. Gadsen subsequently filed a § 2255 Petition in federal court, seeking resentencing on the ground that, because one of his predicate offenses had been vacated, he did not qualify as a career offender. *Id.* at 226.[9]

Judge Wilkinson, writing for the panel (Niemeyer and King, JJ.), observed that South Carolina "vacated a key conviction relied on by the original federal court in setting Gadsen's career offender sentence." *Id.* at 227. And, he described as a "critical 'fact'" the vacated prior state conviction, observing that it could not have been discovered until the South Carolina litigation ended. *Id.* Relying on *Custis* and *Daniels*, the *Gadsen* Court said that the federal statute of limitations "begins running when the state court conviction is conclusively invalidated." *Id.* at 229. It concluded that the § 2255 petition was timely filed. But, the Court expressed no view on the merits. *See also Pettiford*, 612 F.3d at 276 (discussing *Johnson*, *Custis*, *Daniels*, and *Gadsen*).

The government acknowledges that *Gadsen*, 332 F.3d 224, on which Thomas relies, appears to support the notion that Section 2255(f)(4) is "triggered on the date of the vacation of the state court conviction." ECF 166 at 3. However, it argues that Thomas was not diligent,

---

[9] Gadsen was convicted following a jury trial, and his conviction was affirmed on appeal. But, there is no indication that the career offender issue was raised. Nor was there a claim of procedural default.

because he was sentenced on the State case in January 2001, and he did not seek coram nobis relief until August 2010. ECF 166 at 4; *see* ECF 161, ¶ 22.

In my view, the government ignores the teachings of *Custis*, *Daniels*, *Johnson*, and *Gadsen*. Thomas could only lodge his challenge to the constitutionality of a prior Maryland conviction in a Maryland court. A claim as to the constitutionality of a predicate state conviction is not a matter for resolution by a federal trial court or a federal post-conviction court.[10] And, until defendant was sentenced in federal court, the Maryland conviction could not have been the basis for a § 2255 claim.

In any event, Petitioner was not dilatory. He began the process of seeking coram nobis relief even before sentence was imposed in his federal case, in an attempt to avoid the career offender designation. During the pendency of the underlying federal case, the coram nobis proceeding was working its way through the State judicial system. The legal process is not always a quick one. Certainly, the delays that ensued during the State litigation do not reflect a lack of diligence on Thomas's part. In this regard, the State court did not deny relief to Thomas on the basis that he was dilatory. To the contrary, Thomas ultimately prevailed.

Once Thomas obtained relief, in the State legal system, he promptly filed his Petition. As I see it, the Petition was timely filed. *Cf. Mitchell v.* Green, 922 F.3d 187 (4th Cir. 2019) (concluding that the one-year limitations for the filing of a petition under § 2254 was tolled during the pendency of a motion for reduction of sentence in a Maryland court under Maryland Rule 4-345); *see also Wall v. Kholi*, 562 U.S. 545 (2011); *Woodfolk v. Maynard*, 857 F.3d 531 (4th Cir. 2017).

---

[10] The only exception pertains to a claim under *Gideon v. Wainwright*, 372 U.S. 335 (1963). *See*, *e.g.*, *Custis*, 511 U.S. at 494-96. In any event, in his submissions to Judge Quarles, Mr. Ruter attempted to challenge the constitutionality of the State convictions. *See* ECF 115 at 2-7.

## C.

The government claims that Petitioner has defaulted on his claim because he did not pursue an appeal to the Fourth Circuit in regard to the sentence imposed by Judge Quarles, and therefore he is procedurally barred from relief. *See*, *e.g.*, *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 351 (2006).

There was no good faith basis for Thomas to raise an issue on appeal within the time required for the defendant to note an appeal. For one thing, Thomas waived his right to appeal in his Plea Agreement. Moreover, because Thomas had not yet obtained coram nobis relief, his appeal would have been frivolous and futile. *But see Whiteside*, 775 F.3d at 185 (recognizing that futility does not excuse procedural default in the context of collateral review); *see also Bousley*, 523 U.S. 614.

In addressing the issue of procedural default, Thomas argues that he followed the proper procedure outlined by the Supreme Court in *Daniels*, 532 U.S. 374, and *Custis*, 511 U.S. 485: he pursued the matter first in State court, as he was required to do. ECF 165 at 8. And, he asserts that because the underlying conviction was vacated, it "can be equated to actual innocence." ECF 149 at 2.

As the *Gadsen* Court said, 332 F.3d at 228, "'it would be an illogical, if not cruel, gesture for the Supreme Court to invite prisoners to attack their predicate convictions and then inform them that their efforts must go for naught and their enhanced sentences must stand.'" (Citation omitted). Moreover, the Fourth Circuit has said that if a defendant "succeeds in a future collateral proceeding in overturning his [state] conviction, federal law enables him then to seek review of any federal sentence that was enhanced due to his state conviction." *United States v. Bacon*, 94 F.3d 158, 161 n.3 (4th Cir. 1996). That is the path that Thomas followed.

As noted earlier, courts may excuse procedural default when a defendant is able to demonstrate cause and actual prejudice. *Bousley*, 523 U.S. at 622. To excuse procedural default, cause requires "some objective factor external to the defense [that] impeded" the ability to present a claim. *Murray v. Carrier*, 477 U.S. at 488. Of import here, "'a showing that the factual or legal basis for a claim was not reasonably available'" may "constitute the required objective impediment." *United States v. Brown*, No. 7:02-CR-024, 2016 WL 7441717, at *5 (W.D. Va. Dec. 23, 2016) (citation omitted). And, the actual prejudice is obvious.

Therefore, I am satisfied that the claim is not procedurally barred.

### D.

The government contends that Petitioner's claim fails on the merits, because Petitioner's challenge to his career offender status is not cognizable on collateral review. In its view, the case of *United States v. Foote*, 784 F.3d 931 (4th Cir. 2015), *cert. denied*, 135 S. Ct. 2850 (2015), is controlling.

To be sure, "not every alleged sentencing error can be corrected on collateral review." *Foote*, 784 F.3d at 932. Indeed, "a mistaken career offender designation is not cognizable on collateral review." *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015). Rather, only those errors that constitute a "fundamental defect which inherently results in a complete miscarriage of justice" are cognizable. *Davis v. United States*, 417 U.S. 333, 346 (1974) (internal quotation marks omitted). And, this is a "high bar." *Foote*, 784 F.3d at 932.

In *Foote*, 784 F.3d 931, the defendant was sentenced as a career offender. But, in light of *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc), one of his prior North Carolina offenses no longer qualified as a career offender predicate. Accordingly, Foote lodged a challenge under § 2255 with respect to the validity of his career offender designation.

The Fourth Circuit concluded, 784 F.3d at 936, that "sentencing a defendant pursuant to advisory Guidelines based on a career offender status that is later invalidated does not meet this remarkably high bar." The Court explained: "The Supreme Court has interpreted [28 U.S.C. § 2255(a)] such that if the alleged sentencing error is neither constitutional nor jurisdictional, a district court lacks authority to review it unless it amounts to 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (quoting *Davis*, 417 U.S. at 346).

In contrast to the facts of this case, the Fourth Circuit observed in *Foote* that the "federal conviction that brought [Foote] to court in the first place and the state convictions used to enhance his sentence have not been invalidated or vacated; thus, it is difficult to place Appellant's case within the ambit of those decisions" in which the Supreme Court has found a miscarriage of justice. *Id.* at 940. Thus, it determined that the defendant's "career offender designation was not a fundamental defect that inherently results in a complete miscarriage of justice." *Id.* As a result, Foote's claim was not cognizable on collateral review. *Id.*

As I see it, *Foote* is factually inapposite. In *Foote*, as the Court observed, the disputed conviction remained intact; it was not vacated. The only change concerned its qualification as a predicate for sentencing enhancement as a career offender. Because the sentencing guidelines are merely advisory, and a judge may vary from the guidelines, the erroneous characterization of a prior offense as a qualifying career offender predicate was not deemed cognizable in a § 2255 case. *See also Mikalajunas*, 886 F.3d at 495 (stating that "the misapplication of the sentencing guidelines does not amount to a miscarriage of justice"). Here, in contrast, the conviction at issue no longer exists.

The government erroneously views this case through the prism of a mere mistake in the characterization of a prior conviction as a career offender predicate. However, this case is not

about the mischaracterization or misapplication of a prior offense as a predicate for an enhanced career offender sentence. Rather, as a result of coram nobis relief, one of Thomas's two predicate offenses has been vacated, thereby stripping Thomas of his career offender status.

In *Beckles v. United States*, ___ U.S. ___ , 137 S. Ct. 886 (2017), the defendant was convicted of possession of a firearm by a convicted felon, under 18 U.S.C. § 922(g)(1), and was sentenced as a career offender. In his post-conviction petition, the defendant relied on *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551 (2015), to argue that a predicate offense did not qualify for career offender consideration because it was not a "crime of violence."

The Supreme Court ruled that the advisory sentencing guidelines "are not subject to a vagueness challenge under the Due Process Clause" and that U.S.S.G. § 4B1.2(a)'s residual clause is not void for vagueness. 137 S. Ct. at 895. The Court observed that the sentencing guidelines "merely guide the district court's discretion . . . ." *Id.* at 894. Moreover, the Court stated, *id.* at 895: "[T]he Guidelines advise sentencing courts how to exercise their discretion within the bounds established by Congress." Nevertheless, the Court also said, *id.*: "Our holding today does not render the Advisory Guidelines immune from constitutional scrutiny."

Such scrutiny is warranted here. If the issue were merely whether or not a prior conviction was properly deemed a predicate for career offender purposes, the sentencing court, in its discretion, could have given the prior conviction whatever weight it deemed appropriate, regardless of the predicate label. In that context, the advisory nature of the guidelines and the discretion of the sentencing court would come into play. But, that is a far cry from the consideration of an offense as a predicate when there is no such offense. And, in effect, that is the circumstance here.

In every case, the sentencing court must make an individualized assessment, both of the offense and the offender. *See*, *e.g.*, *United States v. Ross*, 912 F.3d 740 (4th Cir. 2019). Judge Quarles faithfully undertook that assessment. But, his effort was framed by the lens of Thomas's career offender status, which dramatically increased Thomas's advisory sentencing guidelines. I recognize that the career offender provision merely serves to guide the court in arriving at a reasonable sentence; it is not mandatory. Thus, a district court may vary from the career offender guidelines sentencing range. *Foote*, 784 F.3d at 941.

But, Judge Quarles clearly enhanced Thomas's sentence based on his status as a career offender, and imposed a career offender sentence. And, that career offender designation no longer applies, because the Circuit Court for Baltimore City vacated an underlying predicate offense on which Judge Quarles relied for defendant's career offender status. On these facts, petitioner is entitled to a new sentencing.

### IV. Conclusion

At oral argument, the government advanced the need for finality as an important factor in opposing the Petition. I recognize "'the important interest of finality in judicial proceedings [which] requires that judicial and substantive errors in cases be laid to rest after specified time periods.'" *United States v. Vanderhorst*, ___ F.3d ___, 2019 WL 2588541, at *2 (4th Cir. June 25, 2019) (citation omitted). *See also Daniels*, 532 U.S. at 378-80 (emphasizing the importance of finality). But, in my view, it would be a miscarriage of justice to deny Petitioner a resentencing under the circumstances of this case.

The government's position is at odds with its role as a "'minister[] of justice.'" *United States v. Rolle*, 204 F.3d 133, 138 n.7 (4th Cir. 2000) (citation omitted). As Justice Sutherland famously said long ago in *Berger v. United States*, 295 U.S. 78, 88 (1935), the government's

interest "in a criminal prosecution is not that it shall win a case but that justice shall be done."  To rule as the government urges would have "the unintended effect of chipping away at [the] ability to safeguard the legitimacy of criminal-justice proceedings."  *United States v. Lockhart*, 917 F.3d 259, 269 (4th Cir. 2019) (Floyd, J., concurring), en banc hearing granted, 2019 WL 2419019 (June 7, 2019).


Date:  July 5, 2019                              _____/s/_____
                                                 Ellen L. Hollander
                                                 United States District Judge